IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2017

**J.W. CAUSEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-05705    Chris Craft, Judge**

_____

**No. W2017-00470-CCA-R3-PC**
_____

The petitioner, J.W. Causey, appeals the denial of post-conviction relief from his 2013 Shelby County Criminal Court jury conviction of first degree murder, for which he received a sentence of life imprisonment. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, J.W. Causey.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        The Shelby County Grand Jury charged the petitioner with one count of first degree premeditated murder. The petitioner's first trial ended in a hung jury, but the petitioner was convicted as charged in a second trial in 2013 and was automatically sentenced to life imprisonment. This court affirmed the conviction on direct appeal. *See State v. J.W. Causey*, No. W2013-01432-CCA-R3-CD (Tenn. Crim. App., Jackson, Sept. 25, 2014), *perm. app. denied* (Tenn. Jan. 16, 2015).

        The evidence adduced at the petitioner's trial established that, on the night of December 17, 2010, a group of four teenage girls gathered at a Memphis-area hotel for a sleepover. *J.W. Causey*, slip op. at 4. Once the girls were in their hotel room, they

began placing telephone calls to friends and inviting them to their room. *Id.*, slip op. at 4-5, 6.

Dedrek McVay arrived at the hotel and encountered the petitioner and two other men smoking and drinking in the lobby; Mr. McVay was unfamiliar with the men but later identified all three in a photographic lineup. *Id.*, slip op. at 5-6. When Mr. McVay later entered the girls' hotel room, he encountered "about fifteen people" and stated that the girls were frightened by "uninvited guests" who were "trying to force themselves into the room." *Id.*, slip op. at 6. One of those guests, a friend of the petitioner's, entered the room and was "touching the girls." *Id.* The petitioner then removed the man from the room. *Id.* According to Mr. McVay, Laterrica Mims contacted the victim, 17-year-old William "Peanut" Bibb, and his friends, Terriyuan Davis and Terrance Rossell, and asked them to come to the hotel. *Id.*, slip op. at 1, 3, 6.

Mr. McVay, Ms. Mims, and Amber Matthews went to the lobby to open the door for the victim, Mr. Davis, and Mr. Rossell. *Id.*, slip op. at 5, 6, 7. According to Mr. Davis, the petitioner and two other men entered the hotel just ahead of his group, and the petitioner entered the elevator. *Id.*, slip op. at 3. The victim, Mr. Davis, Mr. Rossell, Mr. McVay, Ms. Mims, and Ms. Matthews remained in the lobby for several minutes. *Id.*, slip op. at 3, 5-7. Just as the victim and Mr. Davis were preparing to leave the hotel, the elevator doors opened, and the petitioner approached the group with a gun in his hand. *Id.*, slip op. at 3-8. Ms. Matthews recalled that the petitioner asked if "'this [was] who you brought for me, was this who you called up here for me.'" *Id.*, slip op. at 7. Mr. Davis and Mr. Rossell fled to their vehicle. *Id.*, slip op. at 3, 8. The petitioner pointed the gun at the victim, and the victim put his hands up. *Id.*, slip op. at 6. The victim "'[b]asically . . . beg[ed] for his life," but the petitioner shot him once in the chest, killing him in front of Ms. Mims, Mr. McVay, and Ms. Matthews. *Id.*, slip op. at 2, 5, 7.

The 19-year-old petitioner, after being provided with *Miranda* warnings and executing a written waiver of his constitutional rights, provided a statement to police officers in which he admitted responsibility for the victim's death:

> We were chilling at the hotel, had a couple of drinks, and two females were in the room with us. Me and Jay went to the Wendy's on Shelby Drive to get him something to eat. We came back to the room and we also seen women in the hallway. We went upstairs and me, Jay and JR came back downstairs to see the women that me and Jay saw. JR was drunk, JR kept going back to the young women room. JR went to the room twice. I got him out the room because they said they were going to call the police. I was fixin to take

Blue home when I seen four guys walking into the hotel as I was walking to the car. I walk back into the hotel, went up stairs and got the gun. I came downstairs on the elevator and confronted the victim. The victim had a gun also. Blue got the gun out of the victim's back pocket and I shot him. Me and Blue left the hotel. I drove off with Blue in a Taurus. I drove down the street and was dropped off down the street and [sic] Blue off and I went my separate way.

*Id.*, slip op. at 4. The petitioner also told officers that "when he confronted the victim with a pistol, the victim's hands were in the air" and that the victim "never reached for the gun in his back pocket." *Id.* The petitioner elected not to testify and presented no proof. *Id.*, slip op. at 8.

On September 25, 2015, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on December 16, 2016.

At the evidentiary hearing, trial counsel testified that he had been in practice since 2000 and that he had conducted between 30 and 40 jury trials. Trial counsel's defense theory in the petitioner's trial was that the murder was committed in "defense of a third person," and he explained the basis of the theory as follows:

Off of what [the petitioner] told me and what the proof – actually there were several statements by the co-defendant in this case. His statement was that when the killing happened the co-defendant was behind the victim going through his pockets trying to, supposedly, disarm him, according to [the petitioner] that's what was happening. And that is when he reacted and fired his weapon.

Trial counsel testified that the eye-witnesses were "very contradictory at points" from the first trial and that he emphasized the "significant contradictions" during cross-examination and closing argument.

With respect to plea offers, trial counsel testified that the petitioner received no offers prior to the first jury trial. When that trial ended in a hung jury, the State made an offer of 30 years, which the petitioner rejected, and trial counsel believed that the rejection was made on the record in open court.

- 3 -

The petitioner denied ever being offered a 30-year sentence in open court and testified that he definitely would have accepted such an offer had it been extended to him.

With this evidence, the post-conviction court denied relief, finding no clear and convincing evidence that trial counsel had rendered ineffective assistance of counsel. In its detailed, 11-page order denying relief, the court also made the following specific findings:

> [Trial counsel] was called by the petitioner as a witness at the hearing on this petition, and stated that after the first trial (before which no offer of settlement had been made by the State) had resulted in a hung jury, the prosecutor extended an offer of 30 years to settle the case, but that the petitioner rejected that offer. The petitioner testified that no thirty year offer had ever been made to him in open court with the trial judge present, and that if it had, he would have accepted it. No testimony was offered that this offer was not given him outside of court, off the record. This court finds [trial counsel's] testimony credible that the petitioner was conveyed the offer of 30 years prior to the second trial, and rejected it. The petitioner has failed to prove that [trial counsel] breached any duty owed to him to convey any settlement offer.
>
> . . . .
>
> The petitioner was caught on video going upstairs on an elevator to get his gun, returning to the hotel lobby, and then cocking it. Although he shot and killed the victim, a teenager formerly unknown to him, off camera, the various witnesses testified that he shot him in the chest while the victim had his hands in the air begging for his life. Although his co-defendant (only charged with accessory after the fact) was seen by some witnesses standing behind the victim, face covered with a bandana, removing something from the victim's pocket, there was simply no testimony that the victim had ever threatened the petitioner or anyone else that night, or that anyone ever saw him with a gun or any other weapon. The petitioner gave a written statement to the police admitting to the shooting, stating that the victim had his hands

in the air when the petitioner shot him, and that at no point did the victim ever reach for a gun. His trial attorney did an excellent job of obtaining a hung jury the first time the case was tried, obtaining an offer of 30 years as a result, which the petitioner rejected, and appeared from the trial record to have done everything he could for the petitioner at his second trial, which unfortunately for the petitioner resulted in a conviction.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming only that trial counsel performed deficiently by failing to convey the settlement offer to the petitioner. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court defers to the post-conviction court on "questions concerning the credibility of witnesses [and] the weight and value to be given their testimony." *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). This court further accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the denial of relief in this case. Trial counsel testified that the State had offered the petitioner a 30-year sentence prior to the second trial and that the petitioner had rejected the offer. Although the petitioner denied that any such offer had been made, the post-conviction court found trial counsel's testimony on this matter to be credible, and we defer to such credibility determinations. *See Momon*, 18 S.W.3d at 156. The petitioner attempts to parse the post-conviction court's finding that "[n]o testimony was offered that this [plea] offer was not given him outside of court, off the record," contending that the court based its credibility determination on the petitioner's claim that he never received an offer in open court. This is simply much ado about nothing. A clear reading of the post-conviction court's findings reveals that it was simply recounting the hearing testimony before making its credibility determination. Trial counsel was not certain that the plea offer was made in open court; he merely stated that he "believe[d]" it had been. Trial counsel *was* certain, however, that the petitioner had been offered a 30-year sentence and had rejected it. As such, we hold the petitioner has failed to prove by clear and convincing evidence any facts that demonstrate that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

- 6 -

_____

JAMES CURWOOD WITT, JR., JUDGE